Nathan McDONALD and Sharyl McDonald, Individually, and as Next Friend and Guardians of Nathan Neil McDonald, a Minor, and J.N. McDonald, Jr., Individually and d/b/a McDonald Equipment, Appellants,

v.

HOUSTON BROKERAGE, INC., et al., Appellees.

No. 13–94–536–CV.

Court of Appeals of Texas, Corpus Christi.

July 11, 1996.

Rehearing Overruled Sept. 5, 1996.

David L. Sheller, Sheller & Sprain, Houston, for appellants.

Keith Wier, Hudgins, Hudgins & Warrick, Houston, for appellees.

Eric G. Serron, U.S. Department of Labor, Wayne Berry, U.S. Department of Labor, Office of Solicitor, Washington, DC, amicus curie.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

Appellants, plaintiffs below, appeal from an adverse summary judgment entered in favor of appellees, Houston Brokerage, Inc., Mid–West Properties, Inc., Houston Insurance Brokerage Center, and Mike Pinkerton, individually and as an Officer/Director of Houston Brokerage, Inc. and Houston Insurance Brokerage Center. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1986, McDonald Equipment, a sole proprietorship, owned by J.N. McDonald, Jr, obtained group medical insurance for its employees through the Business Insurance Trust ("BIT"), which is a "multiple employer welfare arrangement" as defined in Section 3(40)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(40)(A). At the time McDonald Equipment subscribed to the BIT, the BIT was underwritten by an insurance policy issued by North Carolina Mutual Life Insurance Co. ("North Carolina Mutual").

Although participation in the program was voluntary, McDonald Equipment paid the premiums for its employees and a portion of the premiums for employees' dependents. McDonald Equipment also distributed enrollment and claim forms.

In 1988, the BIT replaced the insurance policy issued by North Carolina Mutual with another policy issued by Provident Indemnity Life Insurance Company ("Provident Indemnity"). Shortly thereafter, Houston Brokerage, Inc. ("HBI"), a non-fiduciary insurance broker that marketed the BIT, represented to McDonald Equipment's insurance agent that the policies issued by North Carolina Mutual and Provident Indemnity were substantially the same, when in fact

they were not. Although both policies were experience rated, appellants claim that the two policies provided for substantially different experience-rating methodologies.

Nathan McDonald, son of J.N. McDonald, Jr., was employed by McDonald Equipment. In 1989, Nathan's son was involved in a near drowning accident, leaving him a spastic quadriplegic. Appellants claim that, within a period of eighteen months after the accident, Provident Indemnity increased McDonald Equipment's premium rates from approximately $2,000 per month to more than $15,000 per month. McDonald Equipment, unable to afford the increased premiums, was forced to cancel its subscription to the BIT, leaving McDonald Equipment without a group medical policy for its employees and Nathan McDonald without medical coverage for his son.

On August 15, 1991, McDonald Equipment, J.N. McDonald, Jr., Nathan McDonald and his wife filed suit against defendants HBI, Mid–West Properties, Inc., Houston Brokerage Center, and Mike Pinkerton. They alleged state law claims for fraud, misrepresentation, breach of warranty, and deceptive trade practices.

Defendants moved for summary judgment on the basis that ERISA preempted plaintiffs' state law claims. They also argued that because of a summary judgment entered in a related federal case, *McDonald v. Provident Indem. Life Ins. Co.*, No. G–91–321 (S.D.Tex. 1993)[1], the plaintiffs' claims were barred by res judicata or collateral estoppel. The Matagorda County District Court granted the motion for summary judgment.

### STANDARD OF REVIEW

■ Summary judgment is proper when the movant shows by uncontroverted or con-

---

**1.** In *McDonald v. Provident Indem. Life Ins. Co.*, the same plaintiffs sued Provident Indemnity, the BIT, and the BIT's trustee in the U.S. District Court for the Southern District of Texas, asserting various Texas state law claims, as well as alternative ERISA claims for breach of fiduciary duty. The federal court granted the defendants' motion for partial summary judgment, holding that the group medical policy offered to McDonald Equipment's employees was an ERISA

plan, and that ERISA section 514(a) preempted the plaintiffs' state law claims against Provident Indemnity, the BIT, and the BIT's trustee. Following a bench trial on the remaining ERISA claims, the district court entered judgment in favor of the defendants. On August 9, 1995, the Fifth Circuit affirmed the district court's rulings. *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir.1995) *cert. denied,* — U.S. ——, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996).

clusive summary judgment evidence that no issue of material fact exists and that he is entitled to judgment as a matter of law. In deciding whether a disputed material fact issue precludes summary judgment, a reviewing court will take as true all evidence favorable to the nonmovant and will indulge all reasonable inferences and resolve all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ Here, the defendants moved for summary judgment by asserting the affirmative defenses of collateral estoppel, res judicata, and ERISA preemption. A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for a summary judgment. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). When a defendant moves for summary judgment on its affirmative defenses, it must conclusively prove all the essential elements of its defenses as a matter of law, leaving no issues of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984), *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

■ When a movant asserts multiple grounds for summary judgment, and the order does not state the theory upon which the trial court based its judgment, as is the case here, the nonmovant must show on appeal the failure of at least one element of each theory asserted. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Otherwise, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied).

## RES JUDICATA

■ Because the first case was decided in federal court, federal law controls the determination of whether res judicata will bar the later state court proceeding. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex.1990). Under federal law, res judicata will apply if: 1) the parties are identical in both suits; 2) the prior judgment is rendered by a court of competent jurisdiction; 3) there is a final judgment on the merits; and 4) the same cause of action is involved in both cases. *Id.* at 718.

Appellants argue that res judicata does not bar their state lawsuit because appellees were not parties to the federal lawsuit. Appellees concede that they were not named parties to the federal litigation but maintain that "as subgeneral agents or insurance brokers to the original transaction in question, [they] clearly have privity with the third-party administrators and insurance company (federal court defendants) which ultimately wrote and administered the insurance policy in question."[2]

■ A non-party defendant can assert res judicata so long as it is in privity with the named defendants. *Gulf Island–IV, Inc. v. Blue Streak–Gulf IS OPS*, 24 F.3d 743, 746 (5th Cir.1994) (rejecting the argument that res judicata applies only to the party against whom the plea is asserted). "A non-party ... is adequately represented where a party in the prior suit is so closely aligned to her interest as to be her virtual representative. [citations omitted] This requires more than a showing of parallel interest—it is not enough that the non-party may be interested in the same questions or proving the same facts." *Id.* at 747 (*quoting Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir.1992)).

■ In *Gulf Island–IV, Inc.*, Gulf Island–IV owned a vessel that had capsized in the Gulf of Mexico while under the operation of a company called Blue Streak. Gulf Island–IV first sued Wausau, its insurance carrier, with whom it settled. Gulf Island–IV later sued Blue Streak, who asserted the defense of res judicata based on the earlier suit against Wausau. In finding that Blue Streak did not

**2.** Curiously, earlier in their motion, HBI and Pinkerton distance themselves from the transaction, which they now attach themselves to as privies, by stating that their "sole involvement in this case was as a facilitator between the solicit-ing agent, Robert Jaffe, and the insurance company in question, Provident, regarding McDonald Equipment Company's enrollment forms and other application materials that were required to procure the insurance in the beginning."

meet the "identity of parties" requirement, the court reasoned that Gulf Island–IV sued Wausau in the preceding suit not as a third party complaining of the negligence of Blue Streak, but rather as a named insured under its Wausau policy. *Gulf Island–IV,* 24 F.3d at 747. The court further reasoned that, although Wasau's interest in certain respects may have been parallel to Blue Streak's in the prior suit, Wausau was not standing in the shoes of Blue Streak, and its interests were not aligned with those of Blue Streak as they conceivably would be in a third-party action. *Id.*

Likewise, in the present suit, appellants sued Provident Indemnity and French, not as a third party complaining of appellees' alleged fraud, misrepresentations, breach of warranty, and deceptive trade practices, but rather as a named insured under its Provident Indemnity group health policy. Based on appellants' complaint in the federal suit, Provident Indemnity and French were not standing in the shoes of appellees, and their interests were not aligned. Provident Indemnity and French were defending themselves against allegations of self-dealing and breach of fiduciary duties as trustees, not against appellees' alleged fraud, misrepresentations, breach of warranty, and deceptive trade practices. Because appellees were not parties to the federal litigation, or in privity with a party to the federal litigation, the "same party" requirement of res judicata is not satisfied. We hold, therefore, that res judicata could not have properly served as the basis for the summary judgment.

## COLLATERAL ESTOPPEL

■ Collateral estoppel, or issue preclusion, bars relitigation of fact or law that was actually litigated and essential to the judgment in the prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be liti-

gated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Sysco Food Serv. v. Trapnell,* 890 S.W.2d 796, 801 (Tex. 1994)[3]; *Mower v. Boyer,* 811 S.W.2d 560, 563 (Tex.1991); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 820 (Tex.1984). With regard to the third element, it is only necessary that the party against whom the doctrine is asserted was a party or in privity with a party in the first action. *Sysco,* 890 S.W.2d at 802. Here, even though appellees were not named defendants in the federal suit, this element is satisfied because appellants were parties in the federal suit.

■ We next consider whether the first and second elements of collateral estoppel have been satisfied. Appellants brought the federal suit[4] against Provident Indemnity, the BIT, and Arden O. French, Jr., as trustee of the BIT, alleging misconduct in setting premiums and handling claims. The state suit alleged fraud, misrepresentation, breach of warranty, and deceptive trade practices regarding appellants' original procurement of the policy and its subsequent transfer from North Carolina Mutual to Provident Indemnity.

Thus, the state suit claims were different from the federal claims and they were directed against different defendants.

Insofar as "full and fair litigation" means actual litigation in the previous suit of the same fact issues (*Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 678 (Tex.1982)), we conclude that the specific preemption issue presented to the state court was not estopped because it was neither fully and fairly litigated in the federal suit, nor essential to the federal court judgment. We hold that appellees' collateral estoppel argument could not have been the basis for granting their motion for summary judgment.

---

3. Even though the claim of collateral estoppel stems from a previous federal court action, a decision on which law to apply is not required because there is little difference between the Texas and federal formulations of collateral estoppel. *Sysco,* 890 S.W.2d at 801 n. 7.

4. This suit was filed nearly a month after the state suit.

## ERISA PREEMPTION

ERISA preemption of state law claims requires a two-fold inquiry which determines (1) whether an ERISA-covered plan has been established, and if so (2) whether ERISA preempts the state law claims at issue.

In *McDonald v. Provident Indem. Life Ins. Co.,* No. G–91–321 (S.D.Tex.1993), *affirmed,* 60 F.3d 234 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996), the federal district court specifically held that McDonald's subscription to the BIT established an ERISA-covered plan. Reconsideration of this issue, as requested by appellants, is barred by collateral estoppel.

We next consider, therefore, whether ERISA preempts appellants' state law claims.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the Act. While the scope of the preemption provision is broad, it is not unlimited. In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983), for example, the Supreme Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, it if has a connection with or reference to such a plan."

ERISA does not preempt state laws of general applicability which have only a "tenuous, remote, or peripheral" connection with employee benefit plans. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995); *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Consequently, "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not preempted, even though they have an obvious effect on the plans. *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988).

Most courts have held that ERISA does not preempt state law claims against non-fiduciaries arising out of the provision of services to ERISA-covered plans. *See, e.g., Airparts Co. v. Custom Benefit Serv. of Austin,* 28 F.3d 1062 (10th Cir.1994) (ERISA does not preempt suit by plan's trustees against an actuarial firm for negligence, implied indemnity, and fraud in connection with plan amendment and the calculation of benefits); *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 540 (7th Cir.1991) (ERISA beneficiaries may bring state law malpractice suits against plan consultants); *Painters Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1153 n. 7 (3d Cir. 1989) ("ERISA does not generally preempt state professional malpractice actions"); *Cook Wholesale v. Connecticut Gen. Life Ins. Co.,* 898 F.Supp. 151 (W.D.N.Y.1995); *Carpenters' Local Union No. 964 Pension Fund v. Granik Silverman,* 1995 WL 378539, 1995 U.S. Dist. LEXIS 8663 (S.D.N.Y. June 22, 1995) (ERISA does not preempt state law claims against plan attorney for malpractice and breach of contract); *Berlin City Ford v. Roberts Planning Group,* 864 F.Supp. 292 (D.N.H.1994) (ERISA does not preempt action against service provider for negligence in the formulation, establishment, and administration of ERISA-covered plans); *Horton v. Cigna Individual Fin. Serv. Co.,* 825 F.Supp. 852 (N.D.Ill.1993) (ERISA does not preempt state law claims against plan consultant for breach of contract, fraud, misrepresentation, and breach of fiduciary duty in connection with the provision of administrative and actuarial services to the plan).

Similarly, most courts have held that state law claims arising out of the sale of insurance products to plans or plan sponsors are not preempted by ERISA. In *Perkins v. Time Ins. Co.,* 898 F.2d 470, 473 (5th Cir.1990), for example, the plaintiff sued an insurance agent claiming that the agent fraudulently induced him to surrender his previous medical insurance coverage and elect to participate in an ERISA-covered plan. The court held that the plaintiff's state law fraudulent inducement claim against the insurance agent was not preempted because it did not "relate to" an ERISA-covered plan within the meaning of ERISA section 514(a). The court emphasized that the claim did not im-

plicate the plan's administration of benefits or "affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries)." *See also Hardy v. Fisher*, 901 F.Supp. 228 (E.D.Tex.1995) (sponsor's claim alleging that insurance agent violated the Texas Deceptive Trade Practices Act not preempted by ERISA); *Barnet v. Wainman*, 830 F.Supp. 610, 613 (S.D.Fla.1993) (participant's state law negligence and fraud claims against insurance agent not preempted by ERISA); *Ingram v. American Chambers Life Ins. Co.*, 643 So.2d 575 (Ala.1994) (participant's state law fraudulent inducement claim against insurance agent not preempted by ERISA).

Appellants' claims in this case do not seek to impose any particular benefit structure on the plan itself, nor do they interfere with the plan's administration.[5] They are not asserting any claims against the plan or its fiduciaries. Their claims allege that an insurance broker misrepresented the true cost of a replacement policy that was used to fund the plan, not that the plan itself was improperly administered or should be required to pay certain benefits. Although appellants appear to seek damages measured by the value of the health benefits that would have been provided under the plan in the absence of the alleged misrepresentation, that by itself is not enough to warrant ERISA preemption. *See Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1406–07 (11th Cir.1994) (plaintiffs' claim that their employer fraudulently induced them to resign from their employment was not preempted by ERISA even though their damages might include a calculation of lost pension benefits). Nor does it matter for ERISA preemption purposes that appellants' state law claims may have some indirect economic effect on ERISA covered-plans, such as by prompting insurance brokers to charge plans higher commissions. *Travelers*, —— U.S. at ——–——, 115 S.Ct. at 1679–80 (state law not preempted simply because it has an indirect economic effect on ERISA-covered plans).

We hold that, although McDonald Equipment established an ERISA-covered plan by purchasing group medical insurance for its employees, ERISA does not preempt appellants' state law claims against appellees for fraud, misrepresentation, breach of warranty, and deceptive trade practices because these claims do not "relate to" an employee benefit plan within the meaning of ERISA section 514(a), 29 U.S.C. § 1144(a).

We sustain appellants' challenge to the summary judgment.

Accordingly, we REVERSE the judgment of the trial court and REMAND for a trial on the merits.

---

5. The claims alleged in the two cases cited by appellees, *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812 (9th Cir.1992) and *Johnson v. Reserve Life Ins. Co.*, 761 F.Supp. 93 (C.D.Cal.1991), are distinguishable. The plaintiffs in *Greany* and *Johnson* alleged claims arising out of the administration of conversion benefits provided under ERISA-covered plans. In both cases, the courts held that these claims were preempted because they arose out of the administration of plan benefits. *Greany*, 973 F.2d at 818–19; *Johnson*, 761 F.Supp. at 95–96. Thus, neither case stands for the proposition that ERISA preempts claims against non-fiduciary insurance brokers arising out of the sale of insurance products to plans. Indeed, the *Johnson* court held specifically that ERISA did not preempt a state law negligence claim against an insurance agent arising out of the failure to procure replacement insurance for an ERISA-covered plan. *Johnson*, 761 F.Supp. at 96.