**INGERSOLL–RAND CO.,**
**et al., Appellants,**

v.

**VALERO ENERGY CORP.,**
**et al., Appellees.**

No. 13–96–281–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 26, 1997.

Rehearing Overruled Oct. 30, 1997.

John M. Calimafde, Hopgood, Calimafde, Kalil & Judowe, New York City, Taylor M. Hicks, Jr., Andrews & Kurth, Houston, Audrey Mullert Vicknair, Paul W. Nye, Chaves, Gonzales & Hoblit, Corpus Christi, Kenneth L. Salmon, David N. Wecht, Joseph A. Katarincic, Katarincic & Salmon, Pittsburgh, PA, John B. Shely, Dimitri Zgourides, Andrews & Kurth, Houston, Rudy Gonzales, Jr., Harvey Ferguson, Jr., Chaves, Gonzales & Rodriguez, Corpus Christi, for Appellants.

James K. McClendon, Thomas H. Watkins, Elizabeth G. Bloch, Hilgers & Watkins, P.C., Austin, Gilberto Hinojosa, Magallanes, Sokat & Hinojosa, Brownsville, for Appellees.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

This is the second appeal resulting from the application of the indemnity provision of a contract ("the Contract") entered into between appellants M.W. Kellogg Company, M.W. Constructors, Inc., M.W. Kellogg Constructors, Kellogg Rust Synfuels, Inc., and Henley/MWK Holding, Inc. (collectively referred to as "Kellogg") and Ingersoll–Rand Company and Dresser–Rand Company (collectively referred to as "Rand"), and appellees Valero Energy Corporation, Valero Refining & Marketing Company and Valero Refining Company (collectively referred to as "Valero").

In 1982, Kellogg contracted with Valero to serve as general contractor in the expansion of Valero's Corpus Christi oil refinery. Rand was hired by Kellogg as a subcontractor on the project. Valero filed suit against Kellogg in 1986, alleging various negligence and deceptive trade practices causes of action arising out of the Contract. Valero added Rand as a defendant in 1989 seeking actual and exemplary damages, as well as attorney's fees. The Contract contained the following indemnity provision:

6.8 OWNER [Valero] shall release, defend, indemnify and hold harmless CONTRACTOR, [Kellogg] its subcontractors and affiliates and their employees performing services under this Agreement against all claims, liabilities, loss or expense, *including legal fees and court costs in connection therewith,* arising out of or in connection with this Agreement or the Work to be performed hereunder, including losses attributable to CONTRACTOR'S negligence, to the extent CONTRACTOR is not compensated by insurance carried under this ARTICLE....

(Emphasis added).

Both Kellogg and Rand filed interlocutory motions for summary judgment asserting the indemnity provision barred Valero's claim. The trial court granted the motions, and, after the trial court severed Valero's claims from the remaining parties and issues in the lawsuit and Valero appealed, we affirmed.[1] The remaining claims were abated pending resolution of the appeal.[2]

After our mandate issued, the trial court dissolved the abatement and Kellogg and Rand filed motions for summary judgment seeking their attorney's fees, court costs, and

---

1. *See Valero Energy Corp. v. M.W. Kellogg Constr. Co.,* 866 S.W.2d 252 (Tex.App.—Corpus Christi 1993, writ denied) (hereinafter *"Valero I"* ).

2. The summary judgments were granted in the original cause number, 86–4223–B; the severed claims were given cause number 91–6592–B.

litigation expenses incurred in defending Valero's claims asserted in *Valero I*. Kellogg and Rand also sought to recover their attorney's fees and costs incurred in pursuing their contractual claim for attorney's fees pursuant to the Texas Civil Practice and Remedies Code.[3]

Valero filed its own motion for summary judgment on the indemnity claims, asserting (1) the claims were compulsory counterclaims not timely urged and therefore waived when the trial court granted the summary judgments; (2) the claims were time-barred; and (3) the claims were not cognizable under § 38.001. The trial court granted Valero's motion and denied the motions of Kellogg and Rand. Kellogg and Rand independently perfected their appeals.

### Standard of Review

We review summary judgment procedures according to the following standards: (1) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

When a movant asserts multiple grounds for summary judgment, and the order does not state the theory upon which the trial court based its judgment, the nonmovant must show on appeal the failure of at least one element of each theory asserted. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Otherwise, we affirm the summary judgment if any one of the theories advanced is meritorious. *McDonald v. Houston Brokerage, Inc.*, 928 S.W.2d 633, 636 (Tex.App.—Corpus Christi 1996, writ denied); *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950

(Tex.App.—Corpus Christi 1988, writ denied).

### RAND'S APPEAL

In its first point of error,[4] Rand asserts the trial court erred in granting summary judgment in this case because the summary judgment in *Valero I* did not dispose of Rand's claim for attorney's fees. The crux of Rand's argument is that because parties and issues remained after the court granted summary judgment in *Valero I*, and because the trial court severed out only the causes of action which formed the basis of the summary judgment in *Valero I*, the summary judgment in *Valero I* did not address Rand's counterclaim, which had not yet been filed.

Rand's argument, while facially persuasive, fails. The issue is not whether the summary judgment in *Valero I* addressed Rand's counterclaim for attorney's fees, but whether Rand should have asserted the counterclaim in response to Valero's claim for damages before the trial court granted summary judgment in *Valero I*. In other words, was Rand's claim for attorney's fees a compulsory counterclaim that is now barred by the application of *res judicata?*

The following dates are relevant:

| | |
|---|---|
| 08–24–89 | Valero sues Rand |
| 10–25–91 | Summary judgment granted in *Valero I* |
| 12–23–91 | Severance granted and non-severed cases abated |
| 06–30–94 | Court of Appeals opinion issues |
| 08–25–94 | Abatement dissolved |
| 09–16–94 | Rand files its counterclaim for attorney's fees |

Rand bases its argument on the fact that only those issues asserted in the summary judgments in *Valero I* were severed out and made final; all other issues remained. This is precisely the point made by Valero—that at the time Rand filed its claim for attorney's fees, no claims were pending between Rand and Valero. *Valero I* was concluded and the trial court's decision had been affirmed;

---

**3.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1986).

**4.** On appeal, Rand has complained only of the granting of Valero's motion for summary judgment and not the denial of its own motion.

thus, the doctrine of *res judicata* precluded Rand from asserting its claim for attorney's fees in cause number 91–6592–B.

 *Res judicata* prohibits a cause of action once finally determined between the parties on the merits by a competent tribunal from afterward being litigated in a new proceeding. *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984). The judgment in the first suit precludes a second action by the parties and their privies, not only on matters actually litigated, but also on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex.1992) (citing *Barr v. Resolution Trust Corp., ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630 (Tex.1992)); *Texas Water Rights Comm. v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979). It has been held, however, that *res judicata* does not apply to cross-claims or counterclaims which the defendant might have filed, unless the compulsory counterclaim rule is applicable. *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 281 (Tex.App.—Amarillo 1990, writ denied).

A counterclaim is compulsory if: (1) it is within the jurisdiction of the court, (2) it is not at the time of filing the answer the subject of a pending action, (3) the claim is mature and owned by the pleader at the time of filing the answer, (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, (5) it is against an opposing party in the same capacity, and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. TEX.R. CIV. P. 97(a); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex.1988). A claim satisfying all six of these elements must be asserted in the initial action and cannot be asserted in later actions. *Id.* The primary question before this Court involves the third requirement—whether Rand's claim for attorney's fees, which it asserted in cause number 91–6592–B, was mature and owned by Rand at the time it filed its answer in cause number 86–4223–B.

 Rand contends it had no claim for indemnity under the Contract until Valero rejected Rand's demand for attorney's fees under the Contract. This argument was squarely rejected by the supreme court in *Getty*:

> The contingent nature of these claims, however, does not preclude the operation of res judicata. We held in *Barr* that "[a] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in a prior suit." 837 S.W.2d at 631. Getty could have asserted its present claims in the [previous] suit, with their resolution being contingent on the plaintiffs' claims.

*Getty*, 845 S.W.2d at 799.

In reaching this conclusion, the *Getty* court also relied on Texas Rule of Civil Procedure 51(b), which provides:

> Joinder of Remedies. Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties.

TEX.R. CIV. P. 51(b).

Recognizing that it had previously held that an indemnitee may bring a claim against an indemnitor before judgment is assigned against the indemnitee, *Gulf, Colorado & Santa Fe Ry. Co. v. McBride*, 159 Tex. 442, 446, 322 S.W.2d 492, 495 (1958), and that forcing the indemnity suit to wait for judgment in the liability suit "would contravene the policy of the courts to encourage settlements and to minimize litigation," *K & S Oil Well Serv., Inc. v. Cabot Corp.*, 491 S.W.2d 733, 739 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.), the court held Getty's claim to be a compulsory counterclaim which it had failed to assert in the previous suit:

> The fact that Getty had no claim for indemnity against NL until the trial court rendered judgment did not preclude this cross-claim. Likewise, Getty could have brought its other contingent cross-claims against NL in the [previous] action. The fact that Getty's claims against NL were contingent on Getty incurring liability in

the [previous] suit does not in and of itself preclude operation of res judicata.

*Getty,* 845 S.W.2d at 799.

Rand's argument was also rejected by the Texarkana Court of Appeals in *Fidelity Mut. Life Ins. Co. v. Kaminsky,* 820 S.W.2d 878 (Tex.App.—Texarkana 1991, writ denied). In that case, when Fidelity sued Kaminsky for rentals due under a lease agreement, Kaminsky claimed he had been constructively evicted. Kaminsky won a final judgment and then, relying on language in the contract, sued Fidelity in a second suit to recover its attorney's fees incurred in the defense of Fidelity's suit. As does Rand, Kaminsky argued his right to fees arose not out of the contract, but out of his having been successful in litigation under the contract. The Texarkana Court of Appeals held Kaminsky's claim was barred by *res judicata* because it was a compulsory counterclaim that should have been pursued in the first suit. *Kaminsky,* 820 S.W.2d at 882.

Rand attempts to distinguish *Kaminsky,* arguing it is not an indemnity case. Rand further disputes *Kaminsky*'s application because the present case "involves an *interlocutory summary judgment* and not a jury trial of all the issues on the merits." (Emphasis Rand's). Finally, Rand asserts *Kaminsky* is inapposite because Kaminsky filed a separate lawsuit, whereas Rand filed its claim for attorney's fees in the same case.

Rand's position is incorrect on all counts. Merely because *Kaminsky* was not an indemnity case does not diminish its applicability on the issue of *res judicata.* Second, the present case does not involve an interlocutory summary judgment. If it were interlocutory, this Court could not have acquired jurisdiction to consider the merits of Rand's appeal. *See Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985) (orig.proceeding); *Cameron County v. Alvarado,* 900 S.W.2d 874, 878 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.) (unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments). The trial court severed all *existing* claims between Rand and Valero and entered a final judgment.

Finally, Rand did, in effect, file a separate lawsuit asserting its claim for fees. The original suit between the parties bore cause number 86–4223–B. After the trial court granted the summary judgments in *Valero I,* those claims were severed out, and the judgment in cause number 86–4223–B became final and appealable. All remaining claims between the parties *that had previously been asserted* were given cause number 91–6592–B and abated. When the trial court dissolved the abatement on August 25, 1994, Rand filed its claim for attorney's fees, not in the original case, cause number 86–4223–B, but in cause number 91–6592–B.

■ Citing TEX.R. CIV. P. 11 and *Padilla v. LaFrance,* 907 S.W.2d 454, 461–62 (Tex. 1995), Rand next claims Valero is bound by its statement, made in open court during a November 11, 1991 hearing, that Rand could pursue its counterclaim after the trial court dissolved the abatement. The statement at issue is Valero's counsel's statement to the court regarding what claims and causes of action were to be severed so that the summary judgments in *Valero I* could be appealed:

All right. Your Honor, Valero—several of the parties here has [sic] filed motions for severance, and I think that the parties can here can agree to the following stipulations, stipulated agreements: That is, that all of the claims between any parties, other than Valero versus Kellogg and Valero versus Ingersoll–Rand, will be severed into a new cause of action leaving pending under this cause number Valero versus Ingersoll–Rand and Valero versus Kellogg. Everything else, the Intervenor, all the cross-claims, any counterclaim by Kellogg against any other party, any counterclaim by Ingersoll–Rand, or cross-claim by Ingersoll–Rand against any other party, would be severed into a new cause of action; this judgment would become a final judgment and an appealable judgment.

As Rand did not have a counterclaim or any other claim for affirmative relief against Valero pending before the court at the time this statement was made, and because the statement did not explicitly provide consent for Rand to later file a counterclaim, we

cannot construe counsel's statement as a rule 11 agreement granting consent for a claim for affirmative relief to be filed by Rand when the abatement was dissolved.

Rand cites two supreme court cases that generally stand for the proposition that when a counterclaim has been severed from the underlying action, the counterclaim is not barred by the entry of a final judgment in the underlying action and it is unnecessary to determine whether the counterclaim was compulsory.[5] We do not disagree with that proposition; it just does not apply in the present case. In the cases cited by Rand, the counterclaim was already asserted when the trial court severed it from the underlying case. Rand has cited no authority where the case in which a counterclaim that relates to an action that has been severed and disposed of is properly filed in the lawsuit that remains.

Rand also questions whether the fourth requirement delineated in *Wyatt* is fulfilled in the present case. Claiming that all of Valero's alleged causes of action against Rand sounded in tort, while its own claim arose from Valero's failure to meet its contractual obligation to indemnify, Rand contends its claim did not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim.

The Texas Supreme Court has confirmed that Texas follows the transactional approach in determining the applicability of *res judicata. See Barr*, 837 S.W.2d at 630. The Restatement (Second) of Judgments suggests that factors to consider in determining whether facts constitute a single "transaction" are "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (1980); *Getty*, 845 S.W.2d at 799.

As a defense to *Valero I*, Rand asserted the Contract's indemnity provision. The provision clearly provided for the payment of attorney's fees and court costs. As Rand asserted the indemnity provision as a defense in cause number 86–4223–B, and because the same provision provided for the payment of attorney's fees and court costs, we hold Rand's claim for attorney's fees asserted in cause number 91–6592–B arose out of the same transaction and occurrence as its asserted defense in cause number 86–4223–B.

We hold that Rand's claim for attorney's fees was a compulsory counterclaim which should have been asserted in cause number 86–4223–B. Having failed to assert the counterclaim at a time when claims were pending between Rand and Valero, Rand was barred by *res judicata* from asserting those claims in cause number 91–6592–B.

Point of error number one is overruled. Because we are affirming the judgment on one of the grounds raised in Valero's motion for summary judgment, it is unnecessary to address Rand's remaining points of error. *McDonald*, 928 S.W.2d at 636.

## KELLOGG'S APPEAL

For the same reasons set out above, we conclude Kellogg's counterclaim was also compulsory. Unlike Rand, Kellogg filed its counterclaim for fees and costs prior to the trial court's granting of the severance which made the interlocutory summary judgment final. However, whether Kellogg filed its counterclaim before the severance is not the issue. Rule 63 provides:

> Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the day of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

5. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985);

*McGuire v. Comm. Union Ins. Co.,* 431 S.W.2d 347, 351 (Tex.1968).

TEX.R. CIV. P. 63. Relying on *Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 855 (Tex.1995),[6] Valero interprets rule 63 to mean that Kellogg should have filed its compulsory counterclaim within seven days before the trial court granted the interlocutory summary judgment, or obtained leave of court to file it later. We agree with this contention, but conclude Kellogg complied with the rule. The trial court's amended order of severance and abatement provided:

> Severed from this action (86–4223–B) and made the subject of a separate action are all parties' claims asserted in Cause Number 86–4223–B, *including the counterclaim asserted and hereto filed on November 20, 1991 by Kellogg against Valero.* ... Those severed claims shall proceed in this Court ... and bear the Docket Number 91–6592–B.

Implicit in the italicized language is the trial court's granting leave for Kellogg to file its compulsory counterclaim after the interlocutory summary judgment was granted. Valero's contention that Kellogg failed to obtain leave of court to file its counterclaim is overruled.

■ Valero next asserts the counterclaim was not timely, because had it been timely, the trial court would have abused its discretion by granting the severance. *Corpus Christi Bank & Trust v. Cross,* 586 S.W.2d 664, 667 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). That is, however, precisely what the trial court did. Valero failed to challenge by cross-point the trial court's action in granting the severance, and thus, the argument is waived. TEX.R.APP. P. 74.[7]

Kellogg's fifth point of error, that the trial court erred in granting summary judgment based on Kellogg's failure to assert a compulsory counterclaim, is sustained.

We must now determine whether the judgment can be affirmed on any of the other bases asserted by Valero in its motion.

Valero also urged that the statute of limitations barred Kellogg from asserting its claim for attorney's fees. Kellogg's counterclaim for attorney's fees pursuant to the indemnity clause in the Contract was a suit for breach of contract. The civil practice and remedies code provides that

> (a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:
>
> (3) debt.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon 1986); *see also Perez v. Gulley,* 829 S.W.2d 388, 390 (Tex.App.—Corpus Christi 1992, writ denied) (the § 16.004(a)(3) limitations period on an action for debt also includes all suits brought to recover money for breach of contract); 50 TEX. JUR.3d *Limitation of Actions* § 32 (1986).

The following dates are relevant to our determination:

07–11–86 Valero sues Kellogg

08–01–86 Kellogg answers

03–22–91 Kellogg files its first amended answer

11–20–91 Kellogg asserts its counterclaim for attorney's fees

■ A cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990); *Ocean Transp., Inc. v. Greycas, Inc.,* 878 S.W.2d 256, 267 (Tex.App.—Corpus Christi 1994, writ denied). Thus, unless Kellogg can show a different date for the accrual of its cause of action, pursuant to the four-year statute of limitations, it was required to file its counter-

---

6. In *Hyundai,* the supreme court stated that "[a] partial summary judgment is a decision on the merits unless set aside by the trial court." *Hyundai,* 892 S.W.2d at 855 (citing *Krenek v. Texstar N.A., Inc.,* 787 S.W.2d 566, 569 (Tex.App.—Corpus Christi 1990, writ denied)).

7. Indeed, Valero would have been hardpressed to assert such a cross-point as it was the party who

moved for the severance so that it could appeal the trial court's granting of the summary judgment. *See Metzger v. Sebek,* 892 S.W.2d 20, 42 (Tex.App.—Houston [1st Dist.] 1994, writ denied)(a party cannot encourage the court to take a particular action and then complain on appeal the court erred by taking it).

claim for attorney's fees under the Contract on or before August 1, 1990, four years after the date on which it filed its original answer and first incurred attorney's fees.

Relying on *Joseph Thomas, Inc. v. Graham,* 842 S.W.2d 343, 345 (Tex.App.—Tyler 1992, no writ) and *Lawyers Title Co. v. Authur,* 569 S.W.2d 578, 581 (Tex.Civ.App.—Waco 1978, no writ) (cause of action on indemnity contract does not begin to run until a final judgment is entered), Kellogg asserts its cause of action for attorney's fees did not accrue until the trial court entered summary judgment in 1991. Kellogg's reliance on these cases is misplaced. First, in both cases, the indemnity provision was asserted by a plaintiff or cross-plaintiff as a basis for recovery, rather than by a defendant such as Kellogg who asserts the indemnity agreement as a defense to preclude the plaintiff's recovery. Second, in the cited cases, the indemnity provision was being asserted against a person who was either not a party to the first action or was brought into the first action as a third party defendant. The cited cases do not involve a situation where, as here, the parties in the first action are the indemnitor and the indemnitee.

Kellogg next contends the statute of limitations did not run in this case because Kellogg did not have a cause of action until Valero failed and refused to indemnify Kellogg for its attorney's fees. In other words, Kellogg asserts its cause of action did not accrue until such time as Kellogg made presentment or demand for payment of its fees. Kellogg's position is correct only if demand is an integral part of Kellogg's cause of action or a condition precedent to its right to sue. *Ocean Transp.,* 878 S.W.2d at 267.

■ Kellogg asserted its right to attorney's fees pursuant to the indemnity provision of the Contract. In indemnity claims, where the indemnity agreement does not require notice, courts will not infer a notice requirement as a condition precedent to a right to recover. *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1221 (5th Cir.1986) (citing *Monical & Powell, Inc. v. Bechtel*

*Corp.,* 404 S.W.2d 911, 915 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.)). As in *Fontenot,* because the indemnity provision at issue does not contain a notice provision,[8] we will not infer one.

Even were Kellogg correct in its position that its cause of action did not accrue until Valero rejected its demand for payment, Valero asserts it repudiated the indemnity provision when it sued Kellogg for negligence and DTPA violations in 1986. We agree. The terms of the indemnity provision obligated Valero to indemnify Kellogg "against all claims, liabilities, loss or expense" in connection with or arising out of or in connection with the Contract. Valero's lawsuit against Kellogg was a definitive statement that it was not indemnifying Kellogg as required under the Contract. We are of the opinion that Valero's filing suit against Kellogg was an unequivocal repudiation of the Contract's indemnity provision, thus triggering the running of the statute of limitations. *See generally, Pitts v. Wetzel,* 498 S.W.2d 27, 29 (Tex. Civ.App.—Austin 1973, writ ref'd n.r.e.) (limitations begin to run upon repudiation of the obligation).

Kellogg also asserts Valero did not plead and prove its affirmative defense by proper summary judgment evidence. Our review of the transcript fails to substantiate Kellogg's claim. Valero alleged in its motion for summary judgment that if it did indeed breach the Contract, it did so by filing suit against Kellogg and that Kellogg's cause of action for attorney's fees under the indemnity agreement accrued at that time. Valero requested and the trial court agreed to take judicial notice of all pleadings and papers filed in *Valero I* as additional summary judgment evidence. This evidence demonstrated to the court the date Valero filed suit; the date Kellogg answered; and that Kellogg had hired an attorney to defend itself, thereby incurring attorney's fees.

Points of error one and six are overruled.

■ Kellogg's third point of error asserts the trial court erred in granting summary

---

8. The indemnity provision in the Contract is not conditioned upon Kellogg receiving a judgment against Valero; rather the requirement is to defend and pay attorney's fees and expenses in defending the suit.

judgment in favor of Valero because there are fact issues that remain unresolved. Kellogg does not state what those facts issues are, whether they are material to the case, and if so, how. We conclude nothing has been presented by this point of error and it is overruled.

In point of error number four, Kellogg asserts the trial court erred in granting Valero's motion for summary judgment and in denying its motion because rule 131 of the Texas Rules of Civil Procedure obligates Valero to pay its costs. Kellogg does not assert that the indemnity provision of the Contract obligates Valero to pay the costs incurred in defending *Valero I*, only that rule 131 mandates that Valero pay those costs. Thus, we will only address the applicability of rule 131.[9]

Rule 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. As the prevailing party in *Valero I*, Kellogg was entitled to recover its costs from Valero. The judgment in *Valero I* did not, however, award Kellogg its costs.

■■■ When Valero appealed the judgment in *Valero I*, Kellogg did not assert as a crosspoint the trial court's failure to award it costs. By not asserting the failure of the trial court to award costs as a cross-point in the appeal of *Valero I*, Kellogg has waived its claim for costs arising out of that suit.

Kellogg's point of error number four is overruled.

In point of error number two, Kellogg complains of the trial court's denial of its motion for summary judgment. To the extent that Kellogg's assertion of its right to summary judgment is founded on the indemnity provision of the Contract, our disposition of point of error number six, that Kellogg's claim is barred by the statute of limitations, applies to this point of error as well.

Even were Kellogg's claim not barred by limitations, we would be compelled to overrule this point of error because a material fact question exists. The express language of the indemnity provision limited Valero's indemnification obligation to fees and expenses that were "not compensated by insurance." As required under the Contract, Kellogg purchased comprehensive general liability ("CGL") insurance. Under the terms of that policy, Kellogg's insurance carrier was required to defend Kellogg against Valero's lawsuit. Kellogg has not contended the claims asserted by Valero in *Valero I* were not covered by the CGL policy, or that its insurer did not provide a defense under the CGL policy. Kellogg failed to provide the trial court with any summary judgment evidence on the amount, if any, of its costs that were not covered by its CGL policy. Thus, a fact question exists concerning whether there were any costs that had not been paid by the CGL policy. The existence of this fact question prevented the trial court from granting Kellogg's motion for summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

Kellogg's second point of error is overruled.

Valero asserts one cross-point that is conditioned upon our reversing the trial court's judgment. As we are affirming the judgment, we do not reach Valero's crosspoint. TEX.R.APP. P. 90(a).

The judgment of the trial court is AFFIRMED.

---

9. Valero's obligation to pay Kellogg's costs was expressly included in indemnity provision of the Contract. Thus, had Kellogg asserted its entitlement to costs under the Contract as a basis for this point of error, rather than rule 131, the point would have been overruled as the claim would be barred by limitations.