Kamel BOUSTANY, Michael K. Shannon, William W. Landholt, Johnny Dunlap, Guillermo E. Pareja, Bruce R. Brandt, Mike Begin, Michael Wayne French, Evan L. Pageler, Mark W. Stewart, Steven L. Boyce, Mark Nixon, Daniel L. Pry, Richard C.L. Brown, Thomas J. Iannozi, Michael Sheldon, Galen Lee Behrands, Steven Leroy Saxton, Phillip O. Mayberry, Deborah S. Vogeler, Gary L. Hauser, Michael G. Rohret, Dennis Zmolek, Ira R. Dahlman, James A. Carey, Craig B. Anderson, Glenn R. Willey, Bruce L. Quernemoen, C. Romeo, Michael J. Mason, Gary R. Icenogle, L.E. Fleetwood, Daniel C. Owens, David Anthony Noonan, Dale M. Lucht, Kevin D. Jackson, Robert L. Kelley, Jon Leyen, Thomas Bethell Oliver, Melvin Michael O'Donnell, Bruce Ryan, Bhupendra Ganatra, Denny Cahill, Jere C. Allen, Terry D. Buzbee, Kent Brown Guthrie, Tor Morne, Philip W. Davidson, Charles B. Kraemer, Earnest W. Sumpter, Perry L. Lipe, Gary E. Stanulis, Geoff Timons, Gregory D. Carr, Dennis Hyland, James Scott McLagan, Thomas A. Dodge, Jerald Austin Moon, Dale A. Kubly, Gordon Eurom, Dale Kendall Lyle, Glen J. Edgerly, J.H. Ho, Leonardo A. Rodriguez, Colin Stuart Lewington, Sadahiro Hirayama, David L. Jumonville, Thomas A. Snead, David M. Plum, Dorothy J. Hellberg, Thomas A. Katich, John R. Weekley, Sandra L. Weekley, Harold Stephen Hamby, Stanley L. Miller, Klaus Koch, Pierre Schelcher, Peter O'Keefe, Vernon Lee Klassen, David J. Postlethwaite, John Charles Tribou, Raymond J. Theis, James A. Nyquist, John M. Costello, Volker Wehres, Richard Hoober, Terry L. Spaeth, Alan M. Young, Stanley Keith Swanson, Kenneth H. Carder, Owen Fallon, Kevin Nelson, Ronald L. Allen, Charles Noonan, Joseph J. Serati, Julia S. McAllister, Wayne Robbins, Dan G. Button, Robert L. Woods, Neal M. Ingram, Galen Wilke, James Edward Montgomery, Julie A. Moran (formerly known as Julie Leach), Carlos Gonzalez, Michele M. Rhilinger, Dennis J. Green, Lawrence W. Meyer, Arand Meijer, William Robertson, and Goh San Keng, Appellants,

v.

MONSANTO COMPANY, Appellee.

No. 01-97-01142-CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 19, 1999.

Rehearing Overruled Dec. 12, 1999.

Russell, W. Heald, Beaumont, John T. Flood, Paul W. Nye, Roberta Shellum Dohse, Audrey Mullert Vicknair, Robert Carl Hilliard, Corpus Christi, for Appellants.

Harry Paul Weitzel, Joe W. Redden, Jr., Houston, John R. Gilbert, Angleton, for Appellee.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MARGARET GARNER MIRABAL, Justice.

This is an appeal by 110 employees, plaintiffs below, from a summary judgment granted in favor of Monsanto Company, in an employment benefits case. We reverse.

### Case Background

Each plaintiff is now, or has been, an employee in a management position at Fisher Controls International, Inc. Fisher was a wholly-owned subsidiary of Monsanto until October 1, 1992, when Monsanto sold Fisher to Emerson Electric for a reported after-tax gain of $500 million dollars. Plaintiffs retained their same positions within Fisher after it was sold.[1]

---

1. All parties agree that following the sale the plaintiffs were no longer employed by a sub-

When Monsanto owned Fisher, Monsanto issued to each plaintiff one or more certificates granting each plaintiff non-qualified stock options to purchase a set number of shares of Monsanto stock at a specified price.[2] Monsanto issued each stock option certificate pursuant to one of three employment incentive plans.[3] For purposes of the motion for summary judgment and this appeal, the parties agree the three plans are the same in relevant part, and accordingly we will address them collectively as "the Incentive Plan."

When Monsanto sold Fisher, Monsanto determined that the sale of Fisher was an event accelerating the exercise deadline dates of the stock options, and Monsanto notified the plaintiffs of its interpretation. Plaintiffs disagreed with Monsanto's interpretation regarding the deadlines for plaintiffs to exercise their stock options,[4] and plaintiffs sued for breach of contract, fraud, and conversion. Plaintiffs later amended their suit to include a claim for breach of duty of good faith.

Monsanto moved for summary judgment based on two grounds: (1) under the terms of the stock option certificates and Incentive Plan, Monsanto's act of selling Fisher resulted in a termination of plaintiffs' employment, and therefore Monsanto did not breach the contract or engage in fraud or conversion when it interpreted the agreements accordingly; and (2) the applicable statutes of limitations bar plaintiffs' causes of action.[5] The trial court granted Monsanto's motion for summary without specifying the grounds upon which it relied. Plaintiffs appeal the summary judgment against them on their asserted causes of action for fraud, breach of contract, and breach of duty of good faith.[6]

## Choice of Law

In their motions and responses, both here and before the trial court, the parties agree that Delaware law applies to all substantive law issues.

## Scope and Standard of Review

■ Although Delaware law applies to the substantive issues, we still apply Texas

sidiary owned by Monsanto, but rather were employed by a subsidiary owned by Emerson. All parties further agree that the subsidiary, Fisher Controls International, Inc., continued as a separate corporation owned by Emerson. It is apparent that the sale of Fisher was accomplished by Monsanto selling 100% of its Fisher stock to Emerson.

2. The exercise prices for options to buy Monsanto stock granted to Fisher employees were as follows:

| Certificate Date | Exercise Price |
|---|---|
| February 1989 | $44.312 per share |
| February 1990 | $54.937 per share |
| February 1991 | $57.063 per share |
| February 1992 | $67.125 per share |

3. The Monsanto Management Incentive Plan of 1984, the Monsanto Management Incentive Plan of 1988/I, or the Monsanto Management Incentive Plan of 1988/II.

4. According to Monsanto's interpretation, the stock option certificates issued in February 1992 were unenforceable and of no effect; the options under the certificates issued in February 1989 had to be exercised within three months of October 1, 1992, the date of the

sale of Fisher; and the options under the certificates issued in February 1990 and 1991 had to be exercised by September 30, 1993, 12 months from the date of the sale of Fisher. Plaintiffs insisted they had up to 10 years from the dates the option certificates were issued to purchase Monsanto stock at the specified option prices. On October 1, 1992, Monsanto stock was trading at $54.375 per share. By August 27, 1993, Monsanto stock was trading at $66.25 per share. On June 5, 1996, Monsanto stock traded at $157.375 per share; thereafter, the stock split.

5. Monsanto did not plead, and did not assert as grounds for summary judgment, that the Incentive Plan and stock option certificates were invalid and unenforceable due to lack of consideration, inadequacy of consideration or failure of consideration; therefore, even though the parties differ about sufficiency of consideration in this case, such affirmative defenses are not involved here.

6. Plaintiffs do not appeal the summary judgment against them on their asserted cause of action for conversion, conceding that their conversion claim is barred by the applicable statute of limitations.

law to matters of procedure. *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991); *Hill v. Perel,* 923 S.W.2d 636, 639 (Tex.App.—Houston [1st Dist.] 1995, no writ). Accordingly, under Texas law, summary judgment under Rule 166a(c) is proper only when the movant establishes there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Long v. State Farm Fire & Cas. Co.,* 828 S.W.2d 125, 126–27 (Tex. App.—Houston [1st Dist.] 1992, writ denied). In reviewing the granting of summary judgment, we assume all evidence favorable to the non-movant is true. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). We indulge every reasonable inference and resolve any reasonable doubt in favor of the non-movant. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Science Spectrum, Inc.,* 941 S.W.2d at 911; *Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 924 (Tex.App.—Houston [1st Dist.] 1993, no writ). A defendant may also obtain summary judgment by conclusively establishing all elements of an affirmative defense as a matter of law. *Science Spectrum, Inc.,* 941 S.W.2d at 911; *Jones,* 846 S.W.2d at 924. Once the defendant produces evidence entitling the defendant to summary judgment, the plaintiff must present evidence raising a fact issue. *Walker,* 924 S.W.2d at 377; *Haight v. Savoy Apartments,* 814 S.W.2d 849, 851 (Tex.App.—Houston [1st Dist.] 1991, writ denied). When, as here, the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion. *Richardson v. Johnson & Higgins of Tex., Inc.,* 905 S.W.2d 9, 11 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

## Contract Construction Generally

In their first issue, plaintiffs assert that the trial court erred in granting Monsanto's motion for summary judgment because the clear and unambiguous terms of the Incentive Plan and stock option certificates establish that plaintiffs' rights under the documents continued unaffected by the change in ownership of their employer, Fisher Controls International, Inc.

 We are presented with the task of determining the proper legal construction of two controlling documents, the Incentive Plan and the stock option certificates. In Delaware, a stock option agreement is construed according to ordinary contract principles. *See Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 395 (Del.1996). The construction of a contract is a question of law for the court to determine. *Klair v. Reese,* 531 A.2d 219, 222 (Del.1987).

 When a term is unambiguous, it is the court's duty to give the words their plain meaning and enforce a contract according to its express terms. *Kaiser,* 681 A.2d at 395; *City Inv. Co. Liquidating Trust v. Continental Cas. Co.,* 624 A.2d 1191, 1198 (Del.1993). To enforce an unambiguous contract, the court examines the entire document and considers each part with every other part so that the effect can be determined. *Seabreak Homeowners Ass'n, Inc. v. Gresser,* 517 A.2d 263, 269 (Del.Ch.1986), *aff'd,* 538 A.2d 1113 (Del.1988) (table decision). It is presumed that the parties to a contract intend every clause to have some effect. *Id.*

## The Incentive Plan

The Incentive Plan states as its purpose the following:

The Monsanto Management Incentive Plan ... is designed to attract and retain for the Company and its Subsidiaries and Associated Companies personnel of exceptional ability; to motivate such

personnel through added incentives to make a maximum contribution to Company objectives; and to be competitive with other companies.

An "Eligible Participant" under the Incentive Plan means an employee of Monsanto or its Subsidiary or Associated Companies. An employee of a Monsanto subsidiary becomes a "Participant" under the Plan once a stock option is granted to the employee.[7] All of the plaintiffs in the present case had become "Participants" under the Incentive Plan, because all had been granted stock options while they were employees of Fisher, a wholly-owned subsidiary of Monsanto.[8]

### The Non–Qualified Stock Option Certificates

The reverse side of each stock option certificate contains the terms and conditions for exercising the options. Under normal circumstances, a Participant was entitled to exercise the option starting one year after the option was granted—the option entitled the Participant to purchase ⅓ of the optioned shares after one year, an additional ⅓ of the optioned shares after two years had passed, and the remaining ⅓ of the optioned shares at the end of three years after the option was granted. In no event could optioned shares be purchased after the date that was 10 years from the "Option Grant Date," *i.e.*, the option term

expired 10 years from the date the stock option certificate was issued.

■ It is uncontested that, at the time Fisher was 100% owned by Monsanto, all 110 plaintiffs had been granted rights to purchase Monsanto stock at specified prices per share. Plaintiffs take the position that, when there was a change in the ownership of Fisher, plaintiffs' rights under their stock option certificates were unaffected, because plaintiffs were still employed by Fisher in the same management positions performing the same job tasks; the fact that Fisher was now owned by a different group of shareholders did not alter the contractual rights plaintiffs held as continuing employees of Fisher.

Monsanto, on the other hand, takes the position that when it sold all its stock in Fisher, this resulted in a "termination of employment" of plaintiffs. "Termination of employment" is defined in the documents as "the discontinuance of employment of a Participant for any reason other than a Transfer."[9] Under the documents, once a Participant's employment has been terminated "by [Monsanto] and its subsidiaries," the Participant has three months to exercise the option to purchase Monsanto stock, unless Monsanto grants additional time.[10]

■ It is uncontested that, after the change of ownership of Fisher, plaintiffs still remained employees of the same cor-

---

7. Thus, once an employee becomes a "Participant," the employee has rights under the stock option grant that continue even after the Participant no longer meets the definition of "Eligible Participant," *i.e.* even after the Participant is no longer an "employee" of Monsanto or its subsidiary.

8. The record indicates many, if not all, plaintiffs received a letter similar to the following:

> The Fisher Controls Executive Compensation Committee, acting upon the recommendations of management, has approved the participation of selected Fisher managers in the Monsanto Stock Option Plan. We are pleased to inform you that the Executive Compensation Committee has approved that you be granted a non-qualified

> option to purchase shares of Monsanto Stock.
> The plan continues to enable recognition for performance. The converse is also true. I look forward to exceptional results from you and your team in the future so we can consider the possibility of a larger than normal grant.

9. A "Transfer" means a change of employment of a Participant within the group consisting of Monsanto, its subsidiaries, and its associated companies. No "Transfer" occurred in the present case.

10. If termination of employment is for cause, the option term expires immediately. This case does not involve any terminations of employment for cause.

poration, Fisher Controls International, Inc. Under the Incentive Plan and the stock option certificates, only a "termination of employment" would affect plaintiffs' rights in the manner advocated by Monsanto. Mindful of our duty to give words their plain meaning, we conclude no "termination of employment" occurred here. Monsanto could have included a change-of-control-of-*subsidiary* provision in the documents, but it did not.[11] A court may not, in the guise of construing a contract, in effect rewrite it to supply an omission in its provisions. *Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.*, 494 A.2d 636, 638 (Del.1985); *Conner v. Phoenix Steel Corp.*, 249 A.2d 866, 868 (Del. 1969); *accord, Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 646 (Tex.1996) (courts will not rewrite agreements to insert provisions parties could have included but did not, such as corporate change-of-control provisions).

Because we have determined that Monsanto incorrectly construed the two controlling documents, Monsanto's first ground for summary judgment was not meritorious. Accordingly, we sustain plaintiffs' first issue.

### Statute of Limitations

 The only other ground for summary judgment asserted by Monsanto was that Delaware's three-year statute of limitations barred plaintiffs' claims. In their fifth issue presented, plaintiffs assert that the Texas statutes of limitations apply, and therefore plaintiffs' claims based on breach of contract, fraud, and breach of duty of good faith are not barred by limitations.

 It is well established that Texas courts consider statutes of limitations procedural in nature. See Hill v. Perel, 923

S.W.2d 636, 639 (Tex.App.—Houston [1st Dist.] 1995, no writ); Hollander v. Capon, 853 S.W.2d 723, 727 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Monsanto urges this Court to overrule the established Texas law and join an "emerging trend among courts" to hold that limitations laws are substantive. Absent clear authority by the legislature or the Texas Supreme Court, we decline to overrule this established law. Accordingly, the Texas statutes of limitations apply here. We sustain issue five.

### Conclusion

Because we have concluded that all the grounds for summary judgment asserted by Monsanto are without merit, the trial court erred in granting the motion for summary judgment.[12] Accordingly, we reverse the judgment and remand to the trial court the causes of action alleging breach of contract, fraud, and breach of duty of good faith.

---

**11.** We note that the stock option certificates do specifically address the effect a change of control of *Monsanto* would have on the rights of the parties: they specify that in the event stock ownership of Monsanto would change by 25% or more, Stock Options held for at least one year would become "fully exercisable" by the Optionee, meaning the Optionee could purchase immediately, or could wait 10 years from the option grant date to purchase, all the shares covered by the stock option certificate.

**12.** In light of our disposition of issues one and five, it is not necessary to address the merits of the remaining issues presented.