

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00385-CV

_____

CARL JOHNSON AND PATRICIA JOHNSON, Appellants

V.

WINDSONG RANCH COMMUNITY, ASSOCIATION, INC., Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 22-7967-431

Before Sudderth, C.J.; Birdwell, and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

This is an accelerated interlocutory appeal pursuant to the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011, 51.014(a)(12) (authorizing interlocutory appeal of an order denying a TCPA motion to dismiss). Appellants Carl and Patricia Johnson contend that the trial court erred by denying their TCPA motion to dismiss Appellee Windsong Ranch Community Association, Inc.'s (the HOA) counterclaim for breach of contract. Because we conclude that (1) the HOA satisfied its burden to establish a prima facie case for each essential element of its breach-of-contract claim by clear and specific evidence and (2) the Johnsons failed to establish an affirmative defense or other grounds entitling them to judgment as a matter of law, we affirm. *See id.* § 27.005(c), (d).

## I. BACKGROUND

The Johnsons reside within the Windsong Ranch development in Prosper, Texas. As Windsong Ranch property owners, the Johnsons are bound by the development's covenants, conditions, and restrictions commonly referred to as the "Master Covenant." Pursuant to the Master Covenant, and subject to the terms of a Facilities Use Agreement, residents of Windsong Ranch are granted access to certain common areas, including the Crystal Lagoon, a roughly five-acre pool complex containing, among other things, three sandy beaches, a playground, grilling areas, and outdoor showers.

In September 2022, the Johnsons sued the HOA and Bearfoot Aquatic Management, LLC, the pool-management company engaged by the HOA to monitor the Crystal Lagoon. The Johnsons alleged that in retaliation for their having filed— and ultimately settled—a prior lawsuit against Bearfoot, the HOA and Bearfoot had targeted them by selectively enforcing certain rules, creating false reports, and imposing "fraudulent fines."[1] Based on these allegations, the Johnsons asserted myriad causes of action against the HOA and Bearfoot,[2] including breaches of fiduciary duty, the covenant of quiet enjoyment, and the duty of fair dealing; negligence; intrusion upon seclusion; violations of statutory process and the Texas Property Code; harassment; conspiracy; aiding and abetting; enforcement of deed restrictions; money had and received; and unjust enrichment.

In July 2023, the HOA filed a counterclaim for breach of contract against the Johnsons.[3] In its counterclaim, the HOA asserted (1) that by filing their lawsuit, the

---

[1]The Johnsons initiated the underlying lawsuit after the HOA assessed a $100 civil fine against them for violating a pool rule.

[2]Bearfoot filed a Rule 91a motion to dismiss all of the Johnsons' claims against it. *See* Tex. R. Civ. P. 91a. After the trial court granted the motion to dismiss, Bearfoot filed a motion to sever all of the Johnsons' causes of action against Bearfoot, which the trial court also granted. The trial court's ruling on Bearfoot's motion to dismiss is the subject of a separate appeal currently pending before this court.

[3]The HOA amended its counterclaim in September 2023 after the Johnsons filed their TCPA motion to dismiss. Because the amended counterclaim was filed before the hearing on the Johnsons' TCPA motion and was therefore the HOA's live pleading at the time that the trial court ruled on the motion, the HOA's amended counterclaim is the relevant pleading for purposes of our TCPA analysis. *See Lopez v.*

3

Johnsons had triggered their obligation under the Facilities Use Agreement to indemnify the HOA for its attorney's fees and costs incurred in defending against the Johnsons' claims and (2) that the Johnsons had anticipatorily breached the contract by making it clear that they had no intention of indemnifying the HOA.

Shortly thereafter, the HOA filed a traditional motion for summary judgment seeking a take-nothing judgment on certain of the Johnsons' claims based on its affirmative defenses of waiver and release.[4] Additionally, the HOA filed four no-evidence summary judgment motions seeking take-nothing judgments on the Johnsons' negligence, intrusion-upon-seclusion, breach-of-the-covenant-of-quiet-enjoyment, and breach-of-fiduciary-duty claims. The Johnsons filed joint responses to all of the HOA's summary judgment motions, attaching hundreds of pages of exhibits. After considering the summary judgment evidence, the trial court granted all

_Sunstate Equip. Co._, No. 05-21-00100-CV, 2022 WL 3714496, at *5 (Tex. App.—Dallas Aug. 29, 2022, pet. abated) (mem. op.) (considering appellant's live pleading at the time of the hearing on appellee's Rule 91a motion to dismiss to be the relevant pleading for purposes of appeal).

[4]Specifically, the HOA's summary judgment motion sought a take-nothing judgment as to the following causes of action asserted by the Johnsons: breaches of fiduciary duty, covenant (generally), and covenant of quiet enjoyment; negligence; violations of statutory process and the Property Code; intrusion upon seclusion; and declaratory judgment.

of the HOA's summary judgment motions, thereby dismissing most or all of the Johnsons' claims.[5]

During this same timeframe, the Johnsons filed a motion to dismiss the HOA's counterclaim pursuant to Rule 91a of the Texas Rules of Civil Procedure, arguing that it failed as a matter of law because (1) the release and indemnification language in the Facilities Use Agreement was not sufficiently conspicuous and (2) the Facilities Use Agreement was not supported by consideration. Following a hearing, the trial court rejected the Johnsons' arguments and denied their motion to dismiss.

On the same day that the trial court signed the order denying the Johnsons' Rule 91a motion to dismiss, they filed another motion to dismiss the HOA's counterclaim, this time under the TCPA. In their motion, the Johnsons argued that the HOA's counterclaim was subject to the TCPA because it was "based on or . . . in response to" their exercise of the right to petition, *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(B), and reurged their previously rejected argument that the Facilities Use Agreement was not supported by consideration. Following a hearing,

---

[5]The trial court's order granting the HOA's traditional summary judgment motion reflects that it is interlocutory because "[the HOA's] counterclaims for breach of contract and for attorney['s] fees . . . remain to be litigated." This language suggests that the trial court believed that all of the Johnsons' claims had been adjudicated. But in their briefing before this court, the Johnsons stated that they still have pending claims for money had and received and the enforcement of restrictive covenants. Because this interlocutory appeal solely concerns the HOA's counterclaim, we need not determine whether the Johnsons have any remaining viable causes of action.

5

the trial court signed an order denying the Johnsons' TCPA motion. This interlocutory appeal followed. *See id.* § 51.014(a)(12).

## II. DISCUSSION

In a single issue, the Johnsons contend that the trial court erred by denying their TCPA motion to dismiss because the HOA failed to establish each essential element of its counterclaim by clear and specific evidence and because the Johnsons established an affirmative defense as a matter of law. We disagree.

### A. Standard of Review and Governing Law

The TCPA—commonly referred to as Texas's anti-SLAPP[6] statute—is intended to "protect[] citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding)); *accord Lyden v. Aldridge*, No. 02-23-00227-CV, 2023 WL 6631528, at *2 (Tex. App.—Fort Worth Oct. 12, 2023, no pet.) (mem. op.); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (summarizing TCPA's purpose as "encourag[ing] and safeguard[ing] the constitutional rights of persons . . . and, at the same time, protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury").

Parties who move for dismissal under the TCPA invoke a three-step, burden-shifting process: (1) first, the movants seeking dismissal must demonstrate that a

---

[6]SLAPP stands for Strategic Lawsuit Against Public Participation. *See Windsor v. Round*, 591 S.W.3d 654, 658 (Tex. App.—Waco 2019, pet. denied).

"legal action" has been brought against them and that the action is "based on or is in response to" an exercise of a protected constitutional right; (2) then the burden shifts to the party bringing the legal action to avoid dismissal by establishing, by clear and specific evidence, a prima facie case for each essential element of the claim in question; and (3) finally, the burden shifts back to the movants to justify dismissal by establishing an affirmative defense or other ground on which they are entitled to judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d); *Lyden*, 2023 WL 6631528, at *2; *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *1 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.).

We review a trial court's ruling on a TCPA motion to dismiss—including its determination of the parties' satisfaction of their respective burdens—de novo. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021); *Lyden*, 2023 WL 6631528, at *2; *Miller*, 2022 WL 60606, at *1–2. Our review encompasses "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based," and we view all of these in a light most favorable to the nonmovant. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at *2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.); *Stallion Oilfield Servs., Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied).

7

## B. The TCPA Applies

To satisfy their burden under the TCPA's first step, the Johnsons argue that the TCPA applies because the HOA's counterclaim was "based on or . . . in response to" their exercise of the right to petition.[7] Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1). We agree.

The TCPA defines "exercise of the right to petition" as "a communication in or pertaining to," among other things, "a judicial proceeding." *Id.* § 27.001(4)(A)(i). In its counterclaim, the HOA asserted that the filing of the Johnsons' petition initiating the underlying lawsuit triggered the indemnification provision in the Facilities Use Agreement that the Johnsons anticipatorily breached. Because the HOA alleged that the Johnsons' petition itself gave rise to the breached obligation and because the petition constitutes a "communication in . . . a judicial proceeding," we conclude that the HOA's counterclaim is "based on or . . . in response to" the Johnsons' right to petition. *See id.* § 27.001(1), (4)(A)(i); *Doe v. Cruz*, No. 04-21-00582-CV, 2023 WL 8246181, at *6 (Tex. App.—San Antonio Nov. 29, 2023, no pet. h.) (op. on reh'g) (holding "revenge porn" counterclaim complaining about the inclusion of a photograph in plaintiff's publicly available amended petition was based on plaintiff's "exercise of the right to petition"—and therefore fell within the

---

[7]Although the HOA contested the issue of TCPA's application in the trial court, it appears to have conceded this point on appeal by not addressing the first step of the TCPA analysis in its appellate brief.

auspices of the TCPA—because the amended petition constituted a "communication in or pertaining to . . . a judicial proceeding"). Accordingly, the Johnsons have satisfied their initial burden to show that the TCPA applies to the HOA's counterclaim.

## C. The HOA Established the Essential Elements of its Counterclaim

Having concluded that the Johnsons satisfied their initial burden to show that the TCPA applies, we must determine whether the HOA carried its burden under the TCPA's second step to establish each essential element of its counterclaim by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). We conclude that it did.

### 1. The Principles Governing Our Analysis of the HOA's Evidence

As we have previously recognized, a specialized body of law has emerged to define the prima facie burden a party responding to a TCPA motion to dismiss bears, to define the words used in the statute, and to explain the TCPA's concepts of proof. *Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *8 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.). The salient governing principles are as follows:

- To present "clear and specific" evidence, the nonmovant "must provide enough detail to show the factual basis for its claim" and must provide enough evidence "to support a rational inference that the allegation of fact is true." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

- The words "clear and specific" are defined to mean, for the former, "'unambiguous,' 'sure,' or 'free from doubt'" and, for the latter, "'explicit' or

9

'relating to a particular named thing.'" *Lipsky*, 460 S.W.3d at 590 (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)).

- "The [party responding to a TCPA motion to dismiss] may rely on circumstantial evidence—indirect evidence that creates an inference to establish a central fact—unless 'the connection between the fact and the inference is too weak to be of help in deciding the case.'" *Dall. Morning News*, 579 S.W.3d at 377 (quoting *Lipsky*, 460 S.W.3d at 589).

- The nonmovant surmounts its burden of establishing a prima facie case when the evidence presented is "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. Stated differently, the burden is met by "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)).

- Statements that are conclusory or evidence that is speculative is not sufficient to carry the nonmovant's burden. *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *9 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (en banc mem. op. on reh'g).

Guided by these principles, we will analyze the evidence supporting the HOA's breach-of-contract claim to determine whether the HOA has satisfied its burden under the TCPA's second step.

### 2. The Evidence Supporting the HOA's Breach-of-Contract Claim

A plaintiff (or counterplaintiff) asserting a breach-of-contract claim may avoid dismissal under the TCPA if it offers clear and specific evidence showing that (1) the parties entered into a valid, enforceable contract; (2) the plaintiff performed the contract; (3) the defendant breached the contract; and (4) the plaintiff sustained damages as a result of the breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d

479, 501 n.21 (Tex. 2018). Here, the record contains clear and specific evidence showing each of these elements.

Regarding the first element, the HOA presented copies of the Facilities Use Agreement reflecting the Johnsons' initials and signatures, excerpts from Carl Johnson's deposition transcript in which he acknowledged that he had executed the Facilities Use Agreement and understood its terms, and an email exchange between Patricia Johnson and the HOA reflecting that she had executed the Facilities Use Agreement to receive access cards to the Windsong Ranch common areas. Because this evidence supports a rational inference that the parties entered into an enforceable contract,[8] the HOA has satisfied its burden as to the first element of its counterclaim. *See Dall. Morning News*, 579 S.W.3d at 377.

---

[8]The Johnsons argue that the Facilities Use Agreement is unenforceable because it is not executed by the HOA. However, a contract can still be effective even if it is signed by only one party. *See DeClaire v. G & B Mcintosh Fam. Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Specifically, if one party signs a contract, the other may accept by its acts, conduct, or acquiescence to the terms. *See id.* Here, it was the HOA who required the Johnsons to sign the Facilities Use Agreement—which was drafted by (or on behalf of) the HOA and contains only one signature block (for the "[o]wner" or "[p]articipant")—as a condition to being granted access to the Windsong Ranch common areas. The record reflects that the HOA granted the Johnsons access to the common areas after they executed the Facilities Use Agreement. Thus, under the circumstances presented in this case, we may rationally infer that the HOA accepted the Facilities Use Agreement's terms. *See id.*; *see also Dall. Morning News*, 579 S.W.3d at 377 (to satisfy its step-two burden, a nonmovant must provide enough evidence "to support a rational inference that the allegation of fact is true").

11

Regarding the second element—the plaintiff's performance under the contract—the HOA's only obligation under the Facilities Use Agreement is to provide the Johnsons access (via the issuance of access cards) to the Windsong Ranch common areas, including the Crystal Lagoon. That the HOA granted the Johnsons access to the common areas does not appear to be in dispute. Indeed, many of the Johnsons' causes of action are predicated on events that occurred while the Johnsons were using the common areas, and their second amended petition[9] explicitly states that "[t]he pool and related facilities were a big part of the Johnsons' family life" and they "used the facilities year-round." Given this judicial admission, we conclude that the record contains clear and specific evidence to support the second element of the HOA's counterclaim. *See Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *5 (Tex. App.—Austin Oct. 10, 2018, no pet.) (mem. op.) (holding that appellees had met their burden under the TCPA's second step to establish a prima facie case based on appellants' judicial admission); *see also TX Far W., Ltd. v. Tex. Invs. Mgmt., Inc.*, 127 S.W.3d 295, 307 (Tex. App.—Austin 2004, no pet.) ("It is well established that 'assertions of fact . . . in the live pleadings of a party are regarded as formal judicial admissions.'" (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001))).

---

[9]Although the Johnsons have supplemented their second amended petition no less than six times, it appears to have been their live pleading at the time of the trial court's ruling on their TCPA motion.

12

Regarding the third element—the defendant's breach of the contract—the Facilities Use Agreement signed by the Johnsons provides:

> I hereby **ACKNOWLEDGE AND AGREE THAT**, in consideration for the [HOA] and **Tellus Group, LLC** ("**TG**"), **VP Windsong Operations LLC** ("**VPO**"), **VP Holdings** ("**VPH**"), and each of their affiliates, parent companies, officers, directors, partners, managers, agents and employees (together, the [HOA], TG, VPO, and VPH are referred to as "**Windsong Ranch**")[] granting me access to THE LAGOON, Commons Amenity Center, the Fitness Center, the Pools, the Dog Park, the Mountain Biking and Disc Golf Courses, and any other common amenities of Windsong Ranch (the "Facilities") . . . , I will be bound by the terms, conditions, and provisions of this Facilities Use Agreement (this "Agreement").  I agree that access to and use of the Facilities is **AT MY OWN RISK** and that Windsong Ranch does not, by provision of the Facilities, assume any responsibility or liability to me, my family members, my guests, tenants, occupants, agents and/or invitees (collectively, "**My Guests**").  I also agree to indemnify, defend, and hold harmless Windsong Ranch from all liability associated with use of the Facilities, by myself and My Guests.
>
> Furthermore, I accept the current and future condition of the Facilities and the property on which the Facilities are located (the "**Property**") **as is** and **with all faults**.  I understand that Windsong Ranch does not make implied or express representations or warranties of any kind whatsoever regarding the Facilities and the Property, including, but not limited to, the safety or security of the Facilities and the Property, the compliance of the Facilities and the Property with any applicable law, or the fitness for any use by me or My Guests.  I understand that no affirmation of Windsong Ranch, by words or actions, shall constitute a warranty of any kind whatsoever.  In addition, I understand that Windsong Ranch shall not be liable to me or My Guests for any damage to person or property proximately caused by any of my acts, omissions or neglect, or the acts, omissions or neglect of My Guests; and I agree to indemnify and hold harmless Windsong Ranch from all claims, demands, actions, suits, and liabilities, of any kind whatsoever, for any such damage. I understand that Windsong Ranch shall in no event be liable for any damage to person or property proximately caused by any act, omission, or neglect of Windsong Ranch. . . .

**I HEREBY RELEASE, ON BEHALF OF MYSELF AND ANY MINOR CHILD TO WHOM I AM GUARDIAN, AND ON BEHALF OF MY HEIRS, EXECUTORS, ADMINISTRATORS AND ASSIGNS, WINDSONG RANCH, AND ALL DIRECTORS, OFFICERS, PARTNERS, AFFILIATES, PARENT COMPANIES, MANAGERS, EMPLOYEES, AGENTS, MANAGERS AND/OR STAFF OF WINDSONG RANCH FROM LIABILITY FOR ANY CLAIMS, DEMANDS, AND CAUSES OF ACTION WITH RESPECT TO THE FACILITIES OR THE PROPERTY.**

Thus, under the terms of the Facilities Use Agreement, the Johnsons released all claims and causes of action against the HOA "with respect to" the Windsong Ranch common areas and agreed to "to indemnify, defend, and hold harmless [the HOA] from all liability associated with" the Johnsons' use of these common areas.

In the underlying lawsuit, the Johnsons have asserted claims against the HOA relating to, among other things, unfair treatment that they have allegedly experienced while using the Windsong Ranch common areas and potential attempts by the HOA to restrict their access to these common areas. By filing a lawsuit against the HOA asserting claims and causes of action "associated with" their use of the Windsong common areas, the Johnsons triggered their obligation to indemnify the HOA for its attorney's fees and costs.[10]

---

[10]The Johnsons argue that the indemnification clause does not apply to some of their causes of action, including targeting, retaliation, and selective enforcement. But these claims all pertain to the Johnsons' use of the Windsong Ranch common areas and the HOA's actions in regulating such use. Thus, these claims are clearly "associated with" the Johnsons' use of the common areas and therefore fall within the broad scope of the indemnification clause. *See associated*, Merriam-Webster.com,

14

In its live pleading, the HOA alleged that the Johnsons had "made it well known that [they have] no intention of indemnifying [the HOA]" and had therefore anticipatorily breached the Facilities Use Agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (instructing that courts "shall consider the pleadings" in deciding a TCPA motion to dismiss). Even if the Johnsons have not repudiated the indemnification provision with their words as alleged by the HOA, they have certainly done so with their actions. *See Jenkins v. Jenkins*, 991 S.W.2d 440, 447 (Tex. App.—Fort Worth 1999, pet. denied) ("Repudiation consists of words *or actions* by a contracting party that indicate he is not going to perform his contract in the future." (emphasis added)). By filing the underlying lawsuit, the Johnsons made a definitive statement that they did not intend to indemnify the HOA; therefore, the lawsuit's very existence constitutes clear and specific evidence of their repudiation. *See Ingersoll-Rand Co. v. Valero Energy Corp.*, 953 S.W.2d 861, 868 (Tex. App.—Corpus Christi–Edinburg 1997) (holding that appellee's act of filing suit against certain appellants was an "unequivocal repudiation" of a contract's indemnity provision), *rev'd on other grounds*, 997 S.W.2d 203 (Tex. 1999); *cf. NRG Expl., Inc. v. Rauch*, 671 S.W.2d 649, 652 (Tex. App.—Austin 1984, writ ref'd n.r.e.) ("A suit brought by a lessor to have the lease terminated constitutes a repudiation."). Thus, the HOA has satisfied its burden as to the third element of its counterclaim.

---

https://www.merriam-webster.com/dictionary/associated (last visited Feb. 12, 2024) (defining "associated" to mean, *inter alia*, "related" or "connected").

15

Regarding the fourth element—damages resulting from the breach—the HOA alleged that it has sustained damages in the form of attorney's fees and costs incurred in defending itself against the Johnsons' claims. The record reflects that the HOA has retained counsel to represent it in the underlying lawsuit, and this fact is sufficient to support a rational inference that it has incurred attorney's fees. *See Dall. Morning News*, 579 S.W.3d at 377; *see also USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 202–03 (Tex. 2023) ("To make a prima facie case under the [TCPA], . . . plaintiffs need not prove the entirety of their damages with specificity."); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 38.004 (authorizing trial court to judicially notice usual and customary attorney's fees and contents of the case file without receiving further evidence in a bench trial on a breach-of-contract claim).

Therefore, the HOA has satisfied its burden under the TCPA's second step to establish a prima facie case for each of its counterclaim's required elements by clear and specific evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

## D. The Johnsons Did Not Establish an Affirmative Defense or Other Grounds on Which They Are Entitled to Judgment as a Matter of Law

Because the HOA satisfied its burden under the TCPA's second step, the burden shifted back to the Johnsons to establish an affirmative defense or other grounds for judgment as a matter of law. *See id.* § 27.005(d). The Johnsons have asserted two such grounds, neither of which has merit.

## 1. Lack of Consideration

The Johnsons argue that the Facilities Use Agreement is unenforceable because it lacked consideration. Specifically, they assert that the HOA's supposed consideration—granting the Johnsons access to Windsong Ranch's common areas—is illusory because the Master Covenant already granted the Johnsons easements of enjoyment and access to these common areas. However, this argument is based on a selective reading of the Master Covenant that simply ignores many of its key provisions. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) (admonishing that when construing a contract, courts must "read all parts . . . together" and "must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section"); *see also Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998) (acknowledging that restrictive covenants are subject to the same rules of construction as contracts).

While the Master Covenant grants homeowners such as the Johnsons easements of access and enjoyment to the Windsong Ranch common areas, these easements are "subject to" certain "restrictions and reservations," including "[t]he right of . . . the [HOA's] Board . . . to promulgate [r]ules regarding the use" of these common areas and "[t]he right of the [HOA] to suspend [a] [m]ember's right to use the [c]ommon [a]rea" for unpaid assessments or other violations of the Master Covenant. Further, the Master Covenant authorizes the HOA to "make, establish,

and promulgate . . . [r]ules not in conflict with this Covenant, as it deems proper, covering any and all aspects of the Development . . . ."

Thus, the Master Covenant did not grant the Johnsons unfettered access to the common areas. Rather, their right of access was clearly made subject to the HOA's rule-making authority. Because the HOA had the authority to condition the Johnsons' access to the common areas on their execution of the Facilities Use Agreement, the consideration flowing to the Johnsons under that agreement was not illusory. Accordingly, the Johnsons have not satisfied their burden to establish that the Facilities Use Agreement lacked consideration. *See TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 761 (Tex. App.—Tyler 2018, pet. denied) (recognizing that a recital of consideration creates a presumption that a contract was supported by consideration and the burden is on the party alleging lack of consideration to rebut this presumption).

## 2. Fair Notice Requirements

The Johnsons argue that the Facility Use Agreement's indemnification provision is unenforceable because it fails to comply with applicable fair notice requirements.[11] We disagree.

_____

[11]The Johnsons included this argument in the section of their brief addressing step two of the TCPA's analytical framework, but the HOA addressed it under step three. Because the Johnsons' fair notice argument is, in essence, an attempt to establish "grounds on which [they are] entitled to judgment as a matter of law," we address this argument under step three. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *see also Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004)

18

Fair notice encompasses (1) the express negligence doctrine and (2) the conspicuousness requirement. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). The express negligence doctrine requires that "the intent of the parties must be specifically stated within the four corners of the contract." *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987); *see Reyes*, 134 S.W.3d at 192. Conspicuousness requires that "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at [the provision]." *Dresser Indus.*, 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972)).

The Johnsons' fair notice argument fails for two reasons. First, the Johnsons did not raise this argument in their TCPA motion and have therefore waived it for TCPA purposes.[12] *See Edry-TX-II, GP v. CCND-Main ST Shopping Ctr., LP*, No. 14-22-00826-CV, 2023 WL 5111061, at *6 (Tex. App.—Houston [14th Dist.] Aug. 10, 2023, pet. denied) (concluding that by failing to raise an affirmative defense in its TCPA motion to dismiss and instead raising it for the first time in its reply brief, appellant "waived that defense for purposes of the TCPA"); *see also Bookout v. Shelley*, No. 02 –

("A contract which fails to satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law.").

[12]The Johnsons briefly argued lack of conspicuousness at the beginning of the hearing on their TCPA motion, but they spent only a small portion of their allotted time addressing this issue. They never explicitly referenced the express negligence doctrine at the hearing and, indeed, did not ever assert it in the trial court as a basis for granting the TCPA motion.

22 – 00055 - CV, 2022 WL 17173526, at *12 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.) (holding that trial court did not err by declining to grant relief that was not requested in TCPA motion itself but was only later requested in the movants' reply brief). Second, even if the Johnsons had not waived the issue, the record does not show that the HOA is seeking indemnity for its own negligence; thus, the fair notice rules do not apply. *See Dresser Indus., Inc.*, 853 S.W.2d at 507 n.1 ("Today's opinion applies the fair notice requirements to indemnity agreements and releases only when such exculpatory agreements are utilized to relieve a party of liability for its own negligence in advance."); *DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 885 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that the fair notice requirements do "not apply where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee"); *see also C&F Int'l, Inc. v. Interoil Servs., LLC*, No. 14-18-00698-CV, 2020 WL 1617261, at *4 (Tex. App.—Houston [14th Dist.] Apr. 2, 2020, no pet.) (mem. op.) ("Because the record does not show that [the indemnitee] was seeking indemnity from its own negligence, conspicuousness is not required."). Although the Johnsons asserted a negligence claim against the HOA, the trial court granted the HOA's traditional and no-evidence summary judgment motions regarding this claim and dismissed it with prejudice. Therefore, nothing in the record suggests that the HOA was negligent, much less that its counterclaim seeks indemnity for its own negligence.[13] Because "[t]he record does not conclusively

---

[13]We cannot conclude that the mere assertion of a negligence claim—even an

establish that [the HOA's] loss was due to its own negligence," the fair notice requirements do not apply. *See C&F Int'l, Inc.*, 2020 WL 1617261, at *4.

Because the HOA has presented clear and specific evidence establishing a prima facie case for each essential element of its counterclaim for breach of contract and the Johnsons have not established an affirmative defense or other grounds that would entitle them to judgment as a matter of law, the trial court did not err by denying the Johnsons' TCPA motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c), (d).

### III. CONCLUSION

Having determined that (1) the TCPA applies to the HOA's counterclaim, (2) the HOA presented clear and specific evidence of each element of its counterclaim, and (3) the Johnsons failed to establish an affirmative defense or other grounds that would entitle them to judgment as a matter of law, we affirm the trial court's order denying the Johnsons' motion to dismiss and remand this matter for further proceedings.[14]

---

unmeritorious one—is sufficient to subject an indemnity clause to the fair notice rules. If this were the case, parties would be incentivized to assert negligence causes of action—even ones short on both legal and evidentiary support—merely to lay the foundation for a fair notice attack on an indemnity provision. The Johnsons have not cited any authority establishing such a rule, and we decline to do so here.

[14]The Johnsons filed objections to all references in the HOA's brief "to evidence outside the HOA's four exhibits made a part of the record for the TCPA motion by the HOA." However, the TCPA provides that in deciding a motion to dismiss, a trial court shall consider, among other things, all "evidence a court could

21

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  February 22, 2024

---

consider under Rule 166a, Texas Rules of Civil Procedure."  Tex. Civ. Prac. & Rem. Code Ann. § 27.006.  When deciding a Rule 166a summary judgment motion, a trial court is not limited to considering only the evidence attached to the motion but may take judicial notice of its own record and consider any documents on file at the time of the hearing.  *See* Tex. R. Civ. P. 166a(c) (stating that summary judgment proof need only be "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court"); *Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018) ("Our rules require a trial court to grant a summary-judgment motion if the evidence *'on file at the time of the hearing,* or filed thereafter and before judgment with permission of the court,'" establishes that the movant is "entitled to judgment as a matter of law." (emphasis added) (quoting Tex. R. Civ. P. 166a(c))); *Weisberg v. London*, No. 13-02-659-CV, 2004 WL 1932748, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2004, no pet.) (mem. op.) ("When considering a summary-judgment motion, the trial court may judicially notice documents that are part of its record in the case at issue, since they are already on file and available for the court's consideration."); *Jones v. Jones*, 888 S.W.2d 849, 852–53 (Tex. App.—Houston [1st Dist.] 1994, no writ) (stating that because a trial court may take judicial notice of documents and orders that are part of its record, a movant need not attach copies of such documents and orders to a summary judgment motion).  Here, the trial court, in the sound exercise of its discretion, took judicial notice of "the procedural history, pleadings, and evidence that ha[d] been adduced in the case so far" and noted that it had "read every document filed."  Because the trial court considered documents beyond the four exhibits to the HOA's response to the Johnsons' TCPA motion, we see no reason to limit our review to those documents.  Accordingly, we overrule the Johnsons' objections.

22